**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| JORDAN GUILLORY, individually and as Natural Tutrix on behalf of her minor children, K.G.F. (AGE 17) and K.G.F. (AGE 14) | * | CIVIL ACTION NO. 2:26-cv-02895 |
| VERSUS | * | JUDGE JAMES D. CAIN, JR. |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, DIVISION OF PROBATION AND PAROLE, ET AL. | * | MAGISTRATE JUDGE THOMAS P. LEBLANC |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO RULE 12(b) MOTION TO DISMISS (REC. DOC. 12)**

**TABLE OF CONTENTS**


SUMMARY OF PLAINTIFFS' POSITION .......... 1

BACKGROUND .......... 2

A. The complaint and its exhibits .......... 2

B. Procedural posture .......... 4

LAW AND ARGUMENT .......... 4

I. The Eleventh Amendment does not bar the claims against the Officers in their individual capacities .......... 4

A. Any dismissal on Eleventh Amendment grounds must be without prejudice .......... 4

B. The individual-capacity claims under § 1983 are not affected .......... 5

C. The Louisiana-law claims against the Officers personally are not barred .......... 5

D. Prospective relief .......... 6

II. The objections to process and service do not warrant dismissal of any Officer .......... 6

A. Five Officers do not contest the manner of service .......... 7

B. Tanner Roberts was served personally .......... 7

C. The summonses were not defective for want of a service address .......... 8

D. A recording that was not an exhibit did not have to be served .......... 8

E. As to the remaining seven Officers, the remedy is to quash and permit service again if needed .......... 9

III. Personal jurisdiction follows service .......... 10

IV. The complaint states claims against the Officers in their individual capacities..............10
A. The pleading standard..........................................................................................10
B. The complaint and its exhibits identify the Officers and what they did..................11
C. The rights at issue were clearly established..........................................................13
D. Punitive damages and fees are authorized by federal law.......................................17
E. Claims belonging only to Jacob Davis.....................................................................18
V. Any deficiency should be met with leave to amend, not dismissal...................................18
VI. Defendants are not entitled to fees or to dismissal with prejudice..................................19
CONCLUSION.......................................................................................................................19

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016)....11
*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)....13
*Arizona v. Hicks*, 480 U.S. 321 (1987)....13
*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020)....11
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....10
*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012)....11
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....10
*Bumper v. North Carolina*, 391 U.S. 543 (1968)....14
*Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344 (5th Cir. 1992)....6
*Carver v. Atwood*, 18 F.4th 494 (5th Cir. 2021)....4
*Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999)....4
*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)....19
*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009)....17
*Conway v. Vannoy*, No. 18-33-JWD-EWD (M.D. La. Mar. 3, 2020)....6
*Coolidge v. New Hampshire*, 403 U.S. 443 (1971)....13
*Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985)....14
*Ex parte Young*, 209 U.S. 123 (1908)....6
*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004)....15
*Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115 (5th Cir. 1982)....7
*Graham v. Connor*, 490 U.S. 386 (1989)....15
*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)....18
*Greene v. DeMoss*, No. 21-30044 (5th Cir. Aug. 29, 2022)....12
*Groh v. Ramirez*, 540 U.S. 551 (2004)....17
*Hafer v. Melo*, 502 U.S. 21 (1991)....5
*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)....12
*Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998)....17
*Hope v. Pelzer*, 536 U.S. 730 (2002)....13
*Horton v. California*, 496 U.S. 128 (1990)....13
*Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999)....6

*Hughes v. Rowe*, 449 U.S. 5 (1980)....................19
*Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990)....................5, 6
*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)....................6
*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018)....................13
*Lewis v. Clarke*, 581 U.S. 155 (2017)....................6
*Los Angeles County v. Rettele*, 550 U.S. 609 (2007)....................15, 16
*Maryland v. Buie*, 494 U.S. 325 (1990)....................13
*Meadours v. Ermel*, 483 F.3d 417 (5th Cir. 2007)....................12
*Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989)....................12
*Michigan v. Summers*, 452 U.S. 692 (1981)....................16
*Muehler v. Mena*, 544 U.S. 93 (2005)....................16
*New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 (5th Cir. 2001)....................6
*Pigott v. Gintz*, No. 23-30879 (5th Cir. Dec. 12, 2024)....................15
*Ramirez v. Killian*, 113 F.4th 415 (5th Cir. 2024)....................15
*Reyes v. Sazan*, 168 F.3d 158 (5th Cir. 1999)....................5
*Ruiz v. AssuranceAmerica Ins. Co.*, No. 2:25-cv-00664 (W.D. La. Sept. 14, 2026)....................9
*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)....................14
*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)....................19
*Smith v. Wade*, 461 U.S. 30 (1983)....................18
*Stramaski v. Lawley*, 44 F.4th 318 (5th Cir. 2022)....................6
*Thomas v. New Leaders for New Schs.*, 278 F.R.D. 347 (E.D. La. 2011)....................9
*Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)....................17
*Thompson v. Brown*, 91 F.3d 20 (5th Cir. 1996)....................9
*United States v. Chavez-Villarreal*, 3 F.3d 124 (5th Cir. 1993)....................14
*United States v. Kelley*, 981 F.2d 1464 (5th Cir. 1993)....................14
*United States v. Tompkins*, 130 F.3d 117 (5th Cir. 1997)....................15
*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)....................6
*Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996)....................4
*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)....................12
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)....................4
*Williams v. Zordan*, No. 21-1061, 2023 WL 6451111 (W.D. La. Sept. 29, 2023)....................9
*Wilson v. UT Health Ctr.*, 973 F.2d 1263 (5th Cir. 1992)....................5

**Constitutional Provisions, Statutes and Rules**

U.S. Const. amend. IV ........ 1, 14, 15, 16
U.S. Const. amend. XI ........ 1, 4, 5, 6, 19
28 U.S.C. § 1915(d) ........ 10
42 U.S.C. § 1983 ........ 1, 4, 5, 17, 18
42 U.S.C. § 1988(b) ........ 18, 19
Fed. R. Civ. P. 4 ........ 4, 7, 8, 9, 10
Fed. R. Civ. P. 7(a) ........ 19
Fed. R. Civ. P. 10(c) ........ 8, 11
Fed. R. Civ. P. 12 ........ passim
La. Civ. Code art. 2315 ........ 5
La. Civ. Code art. 3493.1 ........ 10
La. R.S. 13:5108.1 ........ 6

MAY IT PLEASE THE COURT:

Plaintiffs, Jordan Guillory, individually and as natural tutrix of her minor children, K.G.F. (age 17) and K.G.F. (age 14), submit this memorandum in opposition to the Rule 12(b) Motion to Dismiss (Rec. Doc. 12) filed by the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole ("the Department"), and thirteen of its officers (Boles, Broussard, Ganey, Heptinstall, Lacroix, Paul, Ramos, Roark, Roberts, Skeldon, Stout, Weeks and Wooten, "the Officers").

## SUMMARY OF PLAINTIFFS' POSITION

The motion asks for dismissal of everything, "with full prejudice," and for attorney's fees. Most of what it argues does not reach the claims that matter. Plaintiffs take the following positions.

The Eleventh Amendment does not touch the claims against the Officers in their individual capacities, under 42 U.S.C. § 1983 or under Louisiana tort law. Defendants concede the federal half of that point. (Rec. Doc. 12-2 at 14.)

The service objections do not support dismissal of anyone. Five Officers raise no objection to the manner of service. Tanner Roberts was served in person. The summonses were not defective, and a recording that was never an exhibit did not have to be served. As to the remaining seven Officers, the remedy for delivery to the wrong person at the right office is to quash and allow service again, and Plaintiffs, who proceed in forma pauperis, have moved for that relief and for service by the United States Marshal.

The complaint and its exhibits state Fourth Amendment claims that rest on law settled long before September 12, 2025: a search under a warrant ends when its object is found; a protective sweep is a look for people, not a search for things; consent given to armed officers

who are already searching is not shown to be voluntary by a signature; and force may not be used on people who are complying and pose no threat. To the extent the complaint does not say which Officer did which act, Plaintiffs have moved for leave to file a First Amended Complaint that pleads those facts Officer by Officer, with the time and the body-camera recording for each. The right course is to allow that amendment, if necessary, not to dismiss.

Plaintiffs do not assert Jacob Davis's rights and do not oppose dismissal of the claims that belong only to him.

## BACKGROUND

### A. The complaint and its exhibits

The complaint alleges that before dawn on September 12, 2025, the Department's Special Response Team forced its way into the home Jordan Guillory rents in Hornbeck while she and her two children were inside. (Rec. Doc. 1 ¶¶ 1, 9–10, 34–37, 40.) The team held a search warrant, issued at 9:07 the night before, whose only object was "[t]he body of Jacob Davis," a man the Department says had been released from custody by mistake. (*Id.* ¶¶ 2, 29–30, 33; Rec. Doc. 1-3 at 3–5.) The warrant did not authorize a search for firearms, drugs or anything else. (Rec. Doc. 1 ¶ 33.)

According to the complaint, officers detonated a flash-bang device in the room where the fourteen-year-old slept, fired three flash-bang rounds from a shotgun behind the house, ordered the boy out of his bed and outside at gunpoint, and trained a rifle on the seventeen-year-old, who was one day out of oral surgery. (*Id.* ¶¶ 35–37.) They forced the door of the master bedroom and set off a second device there although Davis had raised his hands. (*Id.* ¶¶ 38–39.) Ms. Guillory was in the adjoining bathroom, unclothed, and a male officer held her there at gunpoint. (*Id.* ¶

40.) She and the children were then kept outside under guard, she in only a robe, and the children were questioned without her. (*Id.* ¶¶ 41–43.)

The complaint alleges that once Davis was in custody the officers kept searching anyway, in "the master bedroom and all other parts of her home," before any consent form was signed; that Defendant Heptinstall told Ms. Guillory that if she did not consent he would get a warrant; and that she signed "while trembling, disoriented, traumatized, and surrounded by armed officers." (*Id.* ¶¶ 44–45.)

The exhibits to the complaint are the Department's own papers. Its Special Response Team summary lists the "Team Members Present": "Chance Paul – Alpha Team Leader"; Alpha team members Weeks, Skeldon, Roark, Roberts, Wooten, Ganey, Heptinstall, Boles and Ramos; and Bravo team member Broussard. (Rec. Doc. 1-3 at 11.) The summary's author writes in the first person that he compiled the information on Ms. Guillory, "contacted Commander Stout," and "requested approval for the Alpha Team to be activated," and that "Commander Stout approved the callout"; it states that the matter began when "Regional Commander Mike Lacroix had reached out" to the team. (*Id.* at 10–11.) It says the team forced entry "using a flashbang for distraction," "again utilized a flashbang" at the master bedroom, and found Davis in bed, where he "immediately surrendered." (*Id.* at 11.) Defendant Ramos's report states that a rifle was seen in the bathroom "[d]uring a protective sweep," and that "I, Agent Ramos, and Agent Roark conducted a search of the bathroom" and found suspected methamphetamine "in the middle drawer underneath the sink." (*Id.* at 9.) The consent form names "Ethan Weeks" as the officer to whom consent was given and as a witness. (*Id.* at 6.)

**B. Procedural posture**

The complaint was filed on August 6, 2026. (Rec. Doc. 1.) Plaintiffs were granted leave to proceed in forma pauperis. (Rec. Doc. 3.) Heptinstall was served on September 1, 2026. A private process server delivered the remaining summonses between October 5 and October 7, 2026, within the ninety days allowed by Rule 4(m), and those returns were filed. (Rec. Doc. 8.) The Rapides Parish defendants have since been dismissed (Rec. Docs. 15, 16), and Colonel Myers is not a movant. The Department and the Officers moved to dismiss on November 6, 2026. (Rec. Doc. 12.) No answer has been filed and no scheduling order has issued. With this opposition Plaintiffs are filing a motion to extend the time for service and for service by the United States Marshal, and a motion for leave to file a First Amended Complaint, with the proposed pleading attached.

**LAW AND ARGUMENT**

**I. The Eleventh Amendment does not bar the claims against the Officers in their individual capacities.**

**A. Any dismissal on Eleventh Amendment grounds must be without prejudice**

A State and its agencies are not "persons" under § 1983, and the Department is an arm of the State of Louisiana. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313–14 (5th Cir. 1999).

Any dismissal on that ground cannot be "with full prejudice," as the motion asks. (Rec. Doc. 12 at 1.) "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996); *accord Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021). Any order should say so.

### B. The individual-capacity claims under § 1983 are not affected

Each Officer is sued "individually and in his official capacity." (Rec. Doc. 1 at 1; *see id.* ¶¶ 12–22, 24–25.) State officers sued in their individual capacities are "persons" under § 1983, and "[t]he Eleventh Amendment does not bar such suits." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Defendants agree. (Rec. Doc. 12-2 at 14.) Section A of their memorandum therefore disposes of no claim against any Officer personally.

### C. The Louisiana-law claims against the Officers personally are not barred

Defendants add, in one sentence, that the Officers are immune from "any and all claims asserted against [them] under state law." (Rec. Doc. 12-2 at 7.) That is not the law of this Circuit for officers sued personally. "*Pennhurst* and the Eleventh Amendment do not deprive federal courts of jurisdiction over state law claims against state officials strictly in their individual capacities." *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992). In *Reyes v. Sazan*, 168 F.3d 158, 162–63 (5th Cir. 1999), Louisiana state troopers sued personally under Civil Code article 2315 raised the same defense, and the Fifth Circuit found "no bar," because the Louisiana provisions sued upon "are statutes of general applicability, not provisions specifically concerning conduct of government officers." Plaintiffs sue under the same article. (Rec. Doc. 1 ¶¶ 73, 75.)

*Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990), on which Defendants rely, turned on a rule of Louisiana law peculiar to its facts: Louisiana did not recognize a negligence action against a prison guard individually for failing to protect one inmate from another, so the claim could be brought only against the guard "as an agent of the state." *Id.* at 379. No such rule applies to an officer's own battery, assault, false imprisonment or unlawful search. Nor does the State's promise to indemnify its employees change the analysis: "the existence of an indemnification statute promising to pay judgments when an officer is sued in his individual

capacity does not extend the Eleventh Amendment's protections around the officer." *Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999); *see also Stramaski v. Lawley*, 44 F.4th 318, 322–24 (5th Cir. 2022); *Lewis v. Clarke*, 581 U.S. 155, 167 (2017) ("indemnification provisions do not alter the real-party-in-interest analysis for purposes of sovereign immunity"). The unpublished decision Defendants themselves cite reads *Hughes* the same way. *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 (5th Cir. 2001) (unpublished). District-court decisions reasoning that La. R.S. 13:5108.1 converts a personal-capacity tort claim into a claim against the State cannot be reconciled with *Hudson*, *Stramaski* and *Lewis*, as another court in this State has held. *Conway v. Vannoy*, No. 18-33-JWD-EWD (M.D. La. Mar. 3, 2020). Defendants make no other argument for dismissal of the Louisiana-law claims against the Officers personally.

### D. Prospective relief

Plaintiffs agree that *Ex parte Young*, 209 U.S. 123 (1908), applies only where the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)). This is a damages action. The one injunctive item in the prayer, an order that body-camera footage, dispatch logs, chain-of-custody records and team reports be preserved (Rec. Doc. 1 at 15), describes a duty every litigant already owes, and Plaintiffs do not rest any official-capacity claim on it.

## II. The objections to process and service do not warrant dismissal of any Officer.

Once service is contested, the party who made it bears the burden of showing that it was valid. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Plaintiffs meet that burden as to Roberts, and the form objections fail as a matter of law.

Plaintiffs do not contend that Defendants' actual notice of this suit cures any defect in delivery; they point to it below only because it shows that no one has been prejudiced.

### A. Five Officers do not contest the manner of service

Only eight Officers claim that their summonses were left with someone else. (Rec. Doc. 12-2 at 10, 12.) Ganey, Heptinstall, Lacroix, Paul and Skeldon make no such claim. A party that makes a Rule 12 motion "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," and a defense of insufficient service of process omitted in that way is waived. Fed. R. Civ. P. 12(g)(2), 12(h)(1)(A); *see Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 118 (5th Cir. 1982). A general statement that Defendants "reserve any and all defenses and/or challenges" (Rec. Doc. 12-2 at 8 n.26) is not an objection. The only objections these five Officers make are the two form objections addressed in Parts II.C and II.D. For completeness, the proof of personal service on Heptinstall on September 1, 2026, which was not among the returns filed as Rec. Doc. 8, is attached as Exhibit B. *See* Fed. R. Civ. P. 4(l)(3).

### B. Tanner Roberts was served personally

Defendants list Roberts among the Officers whose summonses were "left with individuals other than" themselves. (Rec. Doc. 12-2 at 10.) The return says otherwise. It records service on October 6, 2026, at 1003 Johnson Street, Tallulah, Louisiana, and the only person it names as having received the papers is "Tanner Roberts." (Rec. Doc. 8 at 12.) The process server's declaration, attached as Exhibit A, confirms that he handed the summons and complaint to Roberts himself. Defendants offer no declaration from Roberts, or from anyone, to the contrary. That is service under Rule 4(e)(2)(A), which is satisfied by "delivering a copy of the summons and of the complaint to the individual personally." To the extent the form of the return

is unclear, "[f]ailure to prove service does not affect the validity of service," and "[t]he court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3). The declaration is offered for that purpose. It bears only on service and does not convert any part of the motion under Rule 12(d).

### C. The summonses were not defective for want of a service address

Defendants say in a footnote that the summonses are "incomplete" because they contain no "service addresses or instructions." (Rec. Doc. 12-2 at 8 n.26.) Rule 4(a)(1) lists what a summons must contain. It must name the court and the parties; be directed to the defendant; state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff; state the time within which the defendant must appear and defend; notify the defendant that a failure to appear and defend will result in a default judgment for the relief demanded in the complaint; be signed by the clerk; and bear the court's seal. The defendant's address is not on the list. Defendants identify no required item that is missing, and Rule 12(b)(4) reaches nothing else.

### D. A recording that was not an exhibit did not have to be served

Defendants next argue that service was insufficient because the "clip" to which the complaint gives time references was not attached or served. (Rec. Doc. 12-2 at 11–12.) Rule 4(c)(1) requires that "[a] summons must be served with a copy of the complaint." The complaint was filed with five lettered exhibits, all of them documents (Rec. Doc. 1-3), and no recording was among them. Nothing in Rule 4 requires a plaintiff to serve evidence that a complaint mentions but does not attach, and Rule 10(c), which Defendants' own authority quotes, speaks only to "a written instrument that is an exhibit to a pleading." The cases Defendants cite concern what a court may consider on a Rule 12(b)(6) motion; none holds that process is insufficient because a referenced item was not attached.

The references themselves are not mysterious. They are pin cites to body-camera recordings of the operation, nearly all of them made by the Officers' own cameras and kept by their own agency. (*See* Rec. Doc. 1 ¶¶ 44, 47–49.) Even so, the proposed First Amended Complaint replaces the "clip ref." citations with the clock time shown on each recording and the serial number of the camera that made it, which gives Defendants everything a more definite statement under Rule 12(e) could.

### E. As to the remaining seven Officers, the remedy is to quash and permit service again if needed

The returns for Boles, Broussard, Ramos, Roark, Stout, Weeks and Wooten show that, within the Rule 4(m) period, the process server went to each Officer's duty station and delivered the summons and complaint there to a named person. (Rec. Doc. 8 at 1, 5–8, 10–11.) If the Court concludes that those deliveries did not satisfy Rule 4(e), dismissal does not follow. Rule 4(m) directs a court to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff shows good cause, the court must extend the time, and "[i]f good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). Where there is a reasonable prospect that the plaintiff will be able to serve the defendant properly, the proper course is to quash the service and allow another opportunity rather than dismiss. *Thomas v. New Leaders for New Schs.*, 278 F.R.D. 347, 352 (E.D. La. 2011); *Williams v. Zordan*, No. 21-1061, 2023 WL 6451111 (W.D. La. Sept. 29, 2023) (construing officers' Rule 12(b)(5) motion as a motion to quash and allowing time to serve again).

This Court has recognized that dismissal is appropriate where there appears to be no reasonable likelihood that the plaintiff will be able to locate and serve the defendant, and it applied that rule after two ninety-day extensions had failed. *Ruiz v. AssuranceAmerica Ins. Co.*,

No. 2:25-cv-00664 (W.D. La. Sept. 14, 2026). The opposite is true here. These are identified state officers with known duty stations, all represented by the same counsel. Plaintiffs attempted service on every one of them inside the ninety days and filed the returns promptly; the defects were first asserted in this motion, two days after the period ran. The Officers have had the complaint for weeks and have briefed its merits. The two-year prescriptive period of Louisiana Civil Code article 3493.1 has not run, so a dismissal without prejudice would produce only a second, identical suit. And because Plaintiffs proceed in forma pauperis, they are entitled on request to an order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the Court. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). Plaintiffs have made that request in the motion filed with this opposition. Defendants themselves ask, in the alternative, that Plaintiffs "be ordered to serve the referenced Defendants within a specified time period." (Rec. Doc. 12-2 at 12.) That is the appropriate order.

## III. Personal jurisdiction follows service.

The Rule 12(b)(2) argument is the service argument restated. (Rec. Doc. 12-2 at 12.) No Officer disputes that he is a Louisiana officer sued for acts in Louisiana. The objection fails as to Roberts and the five Officers who do not contest delivery, and it will be cured as to the other seven when service is completed.

## IV. The complaint states claims against the Officers in their individual capacities.

### A. The pleading standard

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A defense of qualified immunity does not raise that bar. The complaint must plead specific facts that allow the court to infer that each defendant

is liable and that defeat the defense, but it is not held to a heightened standard. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020); *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The exhibits to the complaint are part of it "for all purposes." Fed. R. Civ. P. 10(c).

### B. The complaint and its exhibits identify the Officers and what they did

Defendants say the complaint "fails to provide any factual detail" about "the individual actions allegedly taken by any of the Individual Defendants." (Rec. Doc. 12-2 at 23.) That overstates it. Read with its exhibits, the complaint alleges the following.

*Paul* was the Alpha Team Leader "who planned, authorized, and directed the September 12, 2025 raid." (Rec. Doc. 1 ¶ 12.) Defendants quote that allegation in a footnote and then assert, on the same page, that it "has not been alleged" that Paul "directed the P&P officers/agents on the night in question" or was present. (Rec. Doc. 12-2 at 15 & n.50.) The Department's own summary lists him first among the "Team Members Present." (Rec. Doc. 1-3 at 11.)

*Heptinstall* conducted the surveillance and, after Davis was in custody, told Ms. Guillory that if she did not consent to a search he would get a warrant. (Rec. Doc. 1 ¶¶ 19, 44.) *Weeks* swore out the warrant limited to Davis's person, took part in the operation, and is the officer named on the consent form. (*Id.* ¶¶ 13, 33; Rec. Doc. 1-3 at 3, 6.) *Roark* located Davis by phone ping, took part in the operation and, with Ramos, searched the bathroom. (Rec. Doc. 1 ¶¶ 15, 31; Rec. Doc. 1-3 at 9.) *Ramos* took part in the operation and reports that he personally searched the bathroom, including a drawer under the sink. (Rec. Doc. 1 ¶ 21; Rec. Doc. 1-3 at 9.)

*Skeldon, Roberts, Wooten, Ganey, Boles and Broussard* are each alleged to have participated in the operation, and the Department's summary names each as a team member present. (Rec. Doc. 1 ¶¶ 14, 16–18, 20, 22; Rec. Doc. 1-3 at 11.) The complaint then describes

what the entry team did: the forced entry, the two devices, the weapons pointed at each child and at their mother, the detention outside, and a search of "the master bedroom and all other parts of her home" before any consent. (Rec. Doc. 1 ¶¶ 34–45.)

*Meadours v. Ermel*, 483 F.3d 417 (5th Cir. 2007), on which Defendants rely, was a summary-judgment decision, and it does not require more at this stage. It holds that each officer's conduct must be considered, and it adds that "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to consider each officer's actions." *Id.* at 422 n.3. The complaint alleges that each of these Officers took part in the operation, and it describes what the team did together: the entry, the force, the detention and the search. (Rec. Doc. 1 ¶¶ 14–22, 34–45.) An officer who stands armed at the door while a colleague carries out an unlawful search may be found to have performed "police functions that were integral to the search." *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989). And an officer who is present when another violates a person's rights, knows it, and has a reasonable opportunity to prevent the harm but chooses not to act, may be liable in his own right. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The Fifth Circuit has accordingly affirmed the denial of officers' motions to dismiss excessive-force and bystander claims where the same factual allegations were made against each of several officers, observing that "identical allegations do not necessarily defeat an otherwise sufficient pleading." *Greene v. DeMoss*, No. 21-30044, slip op. at 8 (5th Cir. Aug. 29, 2022) (unpublished).

Plaintiffs acknowledge that the complaint does not say which of those six team members threw each device, which one pointed a weapon at which plaintiff, or which ones searched before the form was signed. At the time of filing, that was information "peculiarly within the possession

and control of the defendant," which may be pleaded on information and belief where the facts alleged make the inference plausible. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Plaintiffs have since matched the body-camera recordings to the Officers. The proposed First Amended Complaint pleads, for each Officer who was at the house, the act, the time and the recording. That pleading answers the only real objection in Part D of Defendants' memorandum, and it is the reason the motion should be denied as moot or, at the least, denied with leave to amend. *See* Part V below.

### C. The rights at issue were clearly established

Defendants argue qualified immunity only in general terms and do not contend that any act the complaint describes was lawful. (Rec. Doc. 12-2 at 20–23.) Each claim rests on settled law that gave these Officers fair warning. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

*1. Searching after the warrant's object was found.* The warrant named one thing to be seized, Davis's person. (Rec. Doc. 1-3 at 3.) Officers with a warrant for a rifle "may search only places where rifles might be and must terminate the search once the rifle is found." *Horton v. California*, 496 U.S. 128, 141 (1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) (White, J., concurring and dissenting)). The same is true of a search for a person: "Once he was found, however, the search for him was over, and there was no longer that particular justification for entering any rooms that had not yet been searched." *Maryland v. Buie*, 494 U.S. 325, 333 (1990). What remains after an arrest is, at most, a protective sweep, which is "a cursory inspection of those spaces where a person may be found" and lasts "no longer than it takes to complete the arrest and depart the premises." *Id.* at 335–36. Looking further, by moving or opening things, is a new search that needs its own justification. *Arizona v. Hicks*, 480 U.S. 321,

324–25 (1987). Four decades ago the Fifth Circuit affirmed the denial of qualified immunity to officers who kept searching, holding that there was "no conceivable justification for the officers to continue the search after the items described in the warrant had been seized." *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985). The complaint alleges exactly that: a search of the bedroom and the rest of the house after Davis was in handcuffs and before any consent. (Rec. Doc. 1 ¶¶ 2, 44, 57.) A protective sweep is a look for people. It does not authorize a search of a bedroom and the rest of a house for things, and the bathroom search that Ramos and Roark report making after the form was signed (Rec. Doc. 1-3 at 9) stands or falls with the consent.

*2. Consent.* Defendants do not argue that the consent form defeats the claim, and it could not do so on the pleadings. Voluntariness is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *see id.* at 248–49. The burden of showing consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968). In deciding voluntariness the Fifth Circuit weighs six factors, among them the voluntariness of the person's custodial status, the presence of coercive police procedures, and her awareness of the right to refuse, and no one factor controls. *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993). Where consent follows a Fourth Amendment violation, the court asks in addition whether it was "an independent act of free will." *United States v. Chavez-Villarreal*, 3 F.3d 124, 127–28 (5th Cir. 1993). Those decisions arose in criminal prosecutions, but the Fourth Amendment measures a valid consent the same way in a civil case. The complaint alleges a woman held at gunpoint in her bathroom, then kept outside in a robe with her children under guard, told that the alternative to signing was a warrant, and presented with a form while officers were already searching. (Rec. Doc. 1 ¶¶ 40–45.) An officer's statement that he will get a

warrant does not by itself make a consent involuntary, *see United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir. 1997), and a form's printed recital that the signer was told she could refuse does not by itself make it voluntary. Each is one circumstance to be weighed with the others, and here the others include a gunpoint seizure minutes earlier, the continued detention of two children, and a search already under way. Whether this consent was voluntary cannot be resolved against Plaintiffs on a motion to dismiss.

*3. Force against compliant occupants.* The force used in executing a warrant must be reasonable in light of the severity of the matter at hand, whether the person poses an immediate threat, and whether she is resisting or trying to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). It was clearly established well before 2025 that an officer "may not constitutionally use force on a non-threatening subject offering no resistance or merely 'passive' resistance." *Ramirez v. Killian*, 113 F.4th 415, 424–25 (5th Cir. 2024). Holding occupants at gunpoint while a warrant is executed is judged by that standard of reasonableness, *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007) (per curiam), and psychological injuries may sustain a Fourth Amendment excessive-force claim. *Flores v. City of Palacios*, 381 F.3d 391, 398, 400–01 (5th Cir. 2004); *see also Pigott v. Gintz*, No. 23-30879, slip op. at 17–19 (5th Cir. Dec. 12, 2024) (unpublished) (reversing grant of qualified immunity where officer was alleged to have held a compliant father and his children at gunpoint). Plaintiffs' force claims do not depend on any rule against distraction devices as such. They rest on the settled rule that force may not be used on occupants who are complying and pose no threat. None of the three Plaintiffs was the subject of the warrant, suspected of a crime, or resisting. Two were children roused from sleep. The complaint alleges that a rifle was trained on a seventeen-year-old girl, that a fourteen-year-old was ordered from his bed at gunpoint after a device was detonated in his room, and that their

mother was held at gunpoint while unclothed. (Rec. Doc. 1 ¶¶ 35–37, 40, 60.) Each child and Ms. Guillory has been diagnosed with or treated for trauma as a result. (*Id.* ¶¶ 53–55.)

*Rettele* does not hold otherwise on its facts. The Court there approved holding unclothed occupants at gunpoint for one to two minutes while a bedroom was secured, 550 U.S. at 611, 614–15, and in the same passage said that "[u]nreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Id.* at 614. The deputies in *Rettele* had not yet found the suspects they came for. Here the complaint alleges that the one person named in the warrant had already raised his hands and surrendered in the next room, and that every occupant was compliant. (Rec. Doc. 1 ¶¶ 39–40, 60.) Whether any need remained to keep a weapon on Ms. Guillory, and for how long, is a question of fact.

*4. The manner and length of the detention.* Officers executing a warrant to search for contraband may detain the occupants while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *Muehler v. Mena*, 544 U.S. 93, 98 (2005). Assuming the same authority attaches to a warrant for a person, Plaintiffs do not challenge the fact that they were kept from moving about while Davis was being arrested. They challenge what came after. *Summers* and *Mena* permit a detention "while a proper search is conducted," and the only search this warrant authorized ended when Davis was found. Yet Plaintiffs remained detained outside under guard, Ms. Guillory in nothing but a robe, while officers went on searching the house and sought her signature. (Rec. Doc. 1 ¶¶ 41–43, 62.) The authority *Summers* recognizes "cannot be blindly used for the much broader proposition" that an occupant has "no Fourth Amendment right to be free from an unreasonably intrusive or unjustified detention"; "[o]nce the premises was secure and police were proceeding with their work without interference, there was no

justification for prolonging the physically intrusive aspect" of the detention. *Heitschmidt v. City of Houston*, 161 F.3d 834, 838–39 (5th Cir. 1998) (reversing qualified-immunity dismissal of unreasonable-detention claim).

5. *The supervisors.* Count VII is not a vicarious-liability claim, and the argument at page 17 of Defendants' memorandum answers a claim Plaintiffs do not make. A supervisor is liable under § 1983 for his own conduct, which includes personal involvement in the violation or acts causally connected to it. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Paul is alleged to have "planned, authorized, and directed" this operation, and the exhibits show that he was there. (Rec. Doc. 1 ¶¶ 12, 71; Rec. Doc. 1-3 at 11.) The Fifth Circuit has affirmed the denial of qualified immunity, on the pleadings, to officers sued for their "planning, approval, and execution" of a raid as it concerned an unlawful entry and search. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 203 (5th Cir. 2009). And it is "incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). As to Stout and Lacroix, the complaint and exhibits allege that Stout, the team's commander, approved the use of the tactical team for a dawn entry at this residence, and that Lacroix initiated the operation. (Rec. Doc. 1 ¶¶ 24–25, 71; Rec. Doc. 1-3 at 10–11.) Plaintiffs recognize that the liability of those two Officers, who are not alleged to have been at the house, depends on what each knew and approved. The proposed amended pleading states the facts Plaintiffs are presently able to allege as to each, and it also pleads the orders given at the scene by Weeks.

**D. Punitive damages and fees are authorized by federal law**

Defendants say Plaintiffs identify no authority for punitive damages or attorney's fees. (Rec. Doc. 12-2 at 16.) Their own footnote supplies the first: punitive damages are available

against an officer sued individually under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The prayer seeks punitive damages only against "the appropriate individual Defendants," and what the complaint alleges, a device thrown into a room where a child slept, a second detonated after the only person sought had raised his hands, weapons trained on compliant occupants, and a search continued after the warrant was exhausted, would permit a jury to find reckless indifference. The second is in the prayer itself: 42 U.S.C. § 1988(b), which permits the court to allow the prevailing party a reasonable attorney's fee in an action to enforce § 1983. (Rec. Doc. 1 at 15.)

### E. Claims belonging only to Jacob Davis

Mr. Davis is not a plaintiff, and Plaintiffs do not assert his rights. They do not oppose dismissal of Count VI (right to counsel), of Count V to the extent it concerns the handling of evidence used against him, or of the reference in paragraph 75 to his incarceration; the proposed amended pleading omits them. The facts about what was done to Davis remain relevant to Plaintiffs' own claims, because they show when the warrant was exhausted and what force was used a few feet from Ms. Guillory. Plaintiffs seek no recovery for any injury to him; each Plaintiff asserts only her or his own rights.

## V. Any deficiency should be met with leave to amend, not dismissal.

In this Circuit, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). This is Plaintiffs' first complaint. The defect Defendants press, the absence of

Officer-specific facts, is one that Plaintiffs are able to cure and have cured in the pleading tendered with their motion for leave. If the Court were to conclude that still greater detail would help it resolve the immunity defense, it may also order a reply under Rule 7(a) tailored to that defense. *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

**VI. Defendants are not entitled to fees or to dismissal with prejudice.**

A prevailing defendant may recover fees under § 1988 only where the plaintiff's action was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). An action by a mother and two children over a tactical raid on their home, supported by the agency's own reports, is none of those. The request is also premature, because no Defendant has prevailed on anything. And neither a jurisdictional dismissal nor an order regulating service can be entered with prejudice.

**CONCLUSION**

For these reasons, Plaintiffs respectfully ask the Court to (1) deny the motion under Rules 12(b)(2), (4) and (5), or, as to Boles, Broussard, Ramos, Roark, Stout, Weeks and Wooten, quash the service and allow Plaintiffs the time requested in their accompanying motion to serve them through the United States Marshal; (2) dismiss without prejudice the claims that belong only to Jacob Davis; (3) grant Plaintiffs leave to file their First Amended Complaint and deny the remainder of the motion as moot or, alternatively, deny it on the merits; (4) deny Defendants' request for costs and attorney's fees; and (5) order that any dismissal on Eleventh Amendment grounds be without prejudice.

Respectfully submitted,

**JACK L. SIMMS, JR.**
Attorney at Law
La. Bar Roll No. 12093
100 East Texas Street
P.O. Box 1554
Leesville, Louisiana 71496-1554
Telephone: (337) 238-9393
Email: simmsjackjr@att.net
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of November, 2026, a copy of the foregoing Memorandum in Opposition to Rule 12(b) Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

JACK L. SIMMS, JR.